We will hear argument first in Case No. 24-1104, Simpson v. Commissioner of Social Security. Mr. Bose. Good morning, Your Honor. My name is Christopher Bose with the appellate of Robert Simpson. Mr. Simpson, this is an SSI disability case. Mr. Simpson suffers from a long history of psychiatric impairment starting at age 11 when he and his mother were taken hostage by his father and held hostage for three days. He has post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder with mild psychotic features, attention deficit hyperactivity disorder. Another point of grief is that Mr. Simpson has significant psychiatric limitations flowing from these impairments. We know this from the opinions that are in the record that all of the doctors who considered the issue have agreed that Mr. Simpson will be off-task during the workday because of these impairments. The collective opinions are unanimous. It would be more than 15% of the... Well, the unanimous that there are some limitations, right, but we do have opinions in the record that's like Jurega and Wood Wallace say moderate limitations on his ability to maintain a schedule. Rosman says mild limitation, right, might miss two days a month. So it's true that there are impairments, but that's why we have a residual functional capacity finding that is limited to light work, right? Well, light work is the exertional limitation, but what I'm focused in right now is on the psychiatric limitation. If a person is off-task 15% of the day, vocational experts said that that would be work-inclusive. Whether or not Jurega and Wood Wallace... Right, but I'm saying when you have these findings of moderate limitations, like we have said that moderate limitations don't prevent somebody from performing unskilled work. So if we have at least some opinions in the record that say that the limitations are moderate and not severe, that's consistent with the residual functional capacity that allows for unskilled work, right? Respectfully, in this situation, if the court would find so, the court would be imposing its own sense of how much off-task behavior is encapsulated with a moderate limitation. The judge here found none, that there was no off-task behavior in his decision, which is remarkably contrary to the collective evidence of the record. But don't we have... I mean, part of what is, I think, an issue is the fact that the non-examining, whatever the term is, characterized moderate limitations, but it's not defined in their reports. Is that correct? That's correct, and that's part of our point in our brief, right? Because, because they don't define it, and the Commissioner's given every opportunity to define these terms in more locationally relevant terms, like we've used in the questionnaires to the tree resources here. What does moderate mean? Is it 10% of the time? Is it 50%? And forever and a day, the Commissioner has refused to, you know, get more nitty-gritty so that... But those aren't legal categories, right? So the question is just whether the residual capacity finding is supported by substantial evidence. And if we have doctors saying that he has an ability to perform self-care tasks, keep scheduled appointments, he did well in college, had a roommate and a girlfriend, right? Like, that's consistent with the residual capacity findings. I understand there's other evidence that might suggest the impairments are more severe, but the question is whether the record compels the opposite finding. Well, I would point out that the tree resources and social workers followed Mr. Simpson pretty closely. They were aware of all of these factors. They didn't escape their knowledge that he was engaged in trying to obtain a degree and had a girlfriend. These are not things that conclude being off-task. Mr. Simpson has panic effects, so at times he's going to be really off-task, and sometimes he's just off-task. He can only read for seven pages for a 15-minute period of time before taking a break. I would point out that the set of facts in this case is not that different from the case of Laos, where this court held that where every single source says that this person is going to be off-task, it's error for the ALJ to ignore that. With respect to the moderate limitations from the two state agency positions, we don't know. Their description of moderate is not inconsistent with the finding of the other sources. That's all we can say about it. I would like to point out also that if Mr. Simpson – they found moderate limitations in the ability to sustain an ordinary routine. Now, if you look at what they found, they said cannot sustain ordinary routine without supervision. At the same time, they say that he can't have close contact with other people. So how is a person who needs close supervision to stay on routine, especially to do that if he also can't be followed closely by a supervisor who would be needed to do that type of task? But didn't the RFC specifically say that he could have occasional interactions with supervisors? Why isn't that enough? Because the opinion from the treating sources say that he has no useful ability in that area. And the evidence in the file suggests that that is the case consistently. No useful ability in what area? Excuse me? You said he has no useful ability in that area. Social functioning. According to the social workers, he will apply. So you're saying that even saying occasional interaction with a supervisor isn't consistent with the medical – with the record? We believe so. We believe the opinion evidence supports more than – less than occasional contact. My point here being is that with respect to the non-examining state agency – So apart from just these categories of moderate and mild and severe limitations, if the ALJ is looking at the activities that he engaged in, that is, he does do well in college, he has a roommate and a girlfriend, I understand that that's not inconsistent with having limitations in your social functioning, but it is inconsistent with saying that you're unable to have any kind of social interaction because those are social interactions, right? Well, I think maybe I overstated what the social workers have said. It's not – he has real problems interacting with people. He says to – at the same time he's talking about trying to go to school and being happy about doing that, he also says, I have problems dealing with other people. Sometimes I want to get physical and put my hands on them. Okay, but isn't that description you just said, which is that he enjoys going to school and he's doing fine in it but he has trouble interacting with other people, that's consistent with the residual capacity finding that you can do something but only if it requires occasional interaction with supervisors or the public? Yeah, well, I would point out that his – the description of his activities, the collective, the judges going through the record and pulling these things out, it's not enough to overcome the opinion of the mental health providers. And I would also point out the judge says that I'm also relying on some impact and mild mental status examination findings. If you look carefully at where he talks about that, he says, often in the record I find that he's only mild or an assumption of impact. So that implies to me that he sees the other instances throughout the record where that is not the case, and this part is repeatedly held that it would be unusual to see consistent mental status examinations in a mental impairment case where the symptoms are cyclical and not always present. And here, 50% of the time he's off task. Well, that would – we would have to have a really close review of Mr. Simpson's week to nail down – to find those particular ones. It's not – what I'm saying, it's not unusual that you're going to find some normal mental status examination findings for someone who has panic attacks, not every day, but when he has them, you're disabling and preventing him from leaving the house. Okay. Thank you very much, Mr. Bose. You've reserved time for rebuttal, but let's turn to the Commissioner, Ms. Carter. Good morning, Your Honors. Ma'am, please support Molly Carter for the academic report. This report should affirm the Commissioner's finding that since August of 2019, Mr. Simpson could do a range of simple, routine, repetitive work with limited contact with others and substantial evidence towards it. They only recognized Mr. Simpson's limitations in concentrating and attending to tasks and restricted him to only simple, routine, repetitive tasks with only occasional decision-making, changes, and judgment. And the record does not compel the finding of greater limitations. Well, what about Mr. Bose's argument that most of the medical sources say that he's going to be off task 15% of the time, and so even a simple, routine task he won't be able to complete? The term that Mr. Bose used, respectfully, was unanimous, and the opinions are non-unanimous on that, Your Honor. Mr. Rossman finds that Mr. Simpson had at most mild limitations in maintaining attendance and performing within a schedule and at a consistent pace. They found that assessment persuasive. Right, but didn't he, I mean, Mr. Rossman, didn't he also, I mean, he uses the term mild limitations, but isn't he one of the examiners who also says that he'll be off task, I think it might have been more than 15%? He did, Your Honor. The ALJ explained precisely that that was inconsistent with his prior opinion, and that the ALJ was finding the opinion of mild limitations persuasive and the opinion of time off task unpersuasive because it was inconsistent with the mental status exams. It was speculative and not supported by any medical evidence. It was inconsistent with Mr. Simpson's activities, including attending and doing well, including getting all As in college classes, and it was inconsistent with other opinions, including those from Dr. Shariga and Mbawala, who also found that Mr. Simpson could perform unskilled work despite moderate mental limitations. And, as Your Honor pointed out, this Court has consistently rejected the notion that moderate mental limitations necessarily imply some amount of time off task. Right, but it's very much the case, though, that moderate, I mean, if someone said, you know, the person has moderate limitations, and they gave something specific, it could, in fact, be, you know, more than 15%, it could be 5%. I don't know that we can just conclude that the word moderate means it's fine, right? Well, we can because, Your Honor, in this case, Dr. Shariga and Mbawala who said that, their conclusion was that he could do unskilled work, and this Court, again, has repeatedly upheld those. They didn't give limitations, though, as far as time off task or days absence, right? No, unskilled work, it subsumes the notion that he can consistently work, except that unskilled work is the ability to do. You're saying they didn't just say moderate limitations, they said moderate limitations that are consistent with being able to perform unskilled work. Precisely, Your Honor, and this Court, again, has repeatedly upheld those types of assessments as supportive of the RFC, for example. Well, what about Mr. Bowe's point that if he's having panic attacks, even if they're not occurring all the time, they're going to necessarily take him away from work on a regular basis? Two points there, Your Honor. As detailed in our brief, one, there's no reported panic attacks after early 2020, so this isn't something that was reported as an ongoing symptom. And two, when Mr. Simpson reported panic attacks in late 2019 and early 2020, they were often associated with social anxiety and crowds, and so the ALJ restricted him to only occasional contact with others. And then when he returned to therapy in 2021 and 2022, he was specifically working on and demonstrated improved ability to engage with others and to deal with his stressors and use coping skills that he learned empirically to deal with those issues. So there are citations on page 23. Is it after that that he goes to college and has a roommate and a girlfriend and so on? During that same time, in 2020, there's a gap in treatment. He was off medication for a while in 2021, and then he returns to treatment in the late summer, I believe, of 2021. He's living with his girlfriend. He's moved in with his girlfriend. He is going to school at that time, and he says, I've been off medication. I'm going to school. I'm concerned about my ability to concentrate and my ability to deal with other people. I want to get back on medication, and he gets back on medication. Can I interrupt you? Is that also the same period where there's the finding of being able to use public transportation? Which... So in the RFC, right, there's the reference to public transportation. Is that time limited in any way? I don't believe so, Your Honor. But again, the therapy notes do show that he's able to use, in addition to the improvement with medication, to use those coping skills and improve not only his communication with his girlfriend, but his ability to... Right, so he has some social interaction because he's going to school and has a roommate and or a girlfriend and whatever. But what about the notion that he needs a supervisor to keep him on task but can't interact with the supervisor more than occasionally? Again, I believe the reference to a supervisor... Let me just check. I believe the opinion that indicated that he would be on task came from Dr. Shurita and Ubala. I'm not sure at the moment, without a deeper review, what opinion is being referred to as far as needing a supervisor. Again, ALJ relied on Dr. Shurita and Ubala in addition to the other evidence in the record. So you're saying even if there is an opinion that says he might need somebody to keep him on task, the record as a whole... The ALJ credited the aspects of the record that says that he can stay on task, right? Precisely. Enough to perform unskilled work. Precisely, Your Honor. And as detailed in our brief, the ALJ very comprehensively explained why opinions of greater limitations, both in terms of concentration and socially, were inconsistent with the record as a whole and not supported by those sources. What about the earlier medical opinion from Dr. Schild? Should the ALJ have said something more about that? No, Your Honor. Primarily, that was not a medical opinion. It was a statement that Dr. Schild included in the subjective portion of her treatment notes. And the subjective portion of the treatment notes indicates what? That it's his subjective account of what's happening as opposed to her conclusions about what's really happening? Exactly, Your Honor. The notes have a subjective section and then an objective section, which is used in the mental status exam. Is it clear, though, from the notes that everything in the subjective section is, in fact, the doctor just relating what Mr. Simpson said or that some of those comments are from the doctor? I don't know if I... Certainly, traditionally, it's first what the patient has said. The other notion here is that even if there was some assessment from Dr. Schild at that time, it's perfectly consistent with the finding that was estimated in 2015 and it's perfectly consistent with the agency's finding that he was disabled at that time. Mr. Simpson was found disabled and received benefits from 2012 to 2016 before he went to prison and his SSI benefits were terminated. And so even if there was some assessment from Dr. Schild at that time, it's not inconsistent with what has already happened. Right, and so that assessment is four and a half years before the onset date here, right? And so even if it's something the ALJ should have... Even if it's a medical opinion, it's not one that is relevant to this case. Exactly, Your Honor. The internal regulations of the Social Security Administration say that you are going to evaluate each medical opinion for consistency and so on. And they also say that we're going to look at medical opinions within a year of the onset date. But our review is for substantial evidence. So just out of curiosity, I mean, even if we thought that the ALJ didn't follow the rules of the internal adjudication, it's really only a matter for us to vacate the decision if we think that considering it would compel the opposite conclusion under the substantial evidence standard, right? I agree, Your Honor. Again, I don't believe that the court needs to raise that question. You don't think there was a violation, but I guess, like, even if an ALJ overlooked a medical opinion that the regulations required him or her to consider, I guess my question is, that is a concern of ours because we review for substantial evidence only if the overlooked medical opinion would mean that the decision lacked substantial evidence, right? Yes, there are situations where that could be a more potentially dispositive error that the court might be unable to conclude that substantial evidence still supported the decision. But because of the timing, the fact that Dr. Shields wasn't a treater during any of the period at issue here, as well as, again, our contention that it's not an opinion, it certainly wouldn't be that situation here, Your Honors. If Your Honors have no further questions, all the rest of my briefing has been confirmed. Okay, thank you very much, Ms. Carter. We'll turn back to Mr. Bowes on rebuttal. Thank you, Your Honors. Dr. Shields did make an opinion that Mr. Simpson was not able to maintain income employment, is largely unable to attend to the workplace. Well, she says he's totally unable to interact constructively with supervisors, peers, coworkers, or the public. But again, that's under the heading of subjective, which means that's his account rather than her diagnosis. In any event, right, that's from March 23, 2015, which is four and a half years before the onset date here, right? As I said in the beginning, Mr. Simpson has had a lifelong – well, not lifelong, since the age of 11, a very serious psychiatric impairment. This evidence is important because the other evidence can't be measured against it. But as Ms. Carter just said, the agency's finding is that he did have a disability at one time, but then he was able to recover and was able – had a residual functional capacity at a different time. So I understand your argument is that there was a consistent disability, but the question is whether the evidence supports that. And pointing to evidence from the time that everybody agrees he was disabled doesn't seem to compel the conclusion that he was disabled as of the onset date here. I'm confused. I don't think anyone's arguing that he got better. He was incarcerated, and as a natural course of incarceration, your SSI benefits terminate after 12 consecutive months of nonpayment. Right, but he had benefits at that time, right? Yeah, so there's no evidence that he improved between 2015 and 2019. I wanted to point out that the reference to unsealed work is not a medical finding. It's a conclusion by the state agency physicians. And this court is held in Rucker, I believe it was. It said the reference to unsealed work is not in and of itself a medical finding. Well, that's right. That means the ALJ doesn't defer to medical sources' statement that he's capable of unsealed work because disability is an administrative finding for the commissioner. But if a medical source gives an opinion that, like, I think he could perform this kind of work, that's an assessment they're giving. It's not dispositive. You don't have to defer to it. It's for the commissioner to understand, but it's evidence, right? It's a vocational assessment. It's not a medical assessment because doctors don't necessarily know what the wide world of unsealed work requires. And that's the reason why I believe in Rucker the court reached that conclusion. The commissioner's own POMS guidelines say don't refer to unsealed work. And they also say don't use the phrase moderate either. This is in the brief at page 22. If nothing else, Your Honor, I think my time is up. Okay. Thank you very much, Mr. Bowes. The case is submitted.